UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                   :

In re:                               :   **OPINION AND ORDER**
                                   :

PURDUE PHARMA L.P.,       :   21 CV 2674 (VB)
            Debtor.       :
                                   :

--------------------------------------------------------------x

PURDUE PHARMA L.P.; PURDUE PHARMA  :
INC.; PURDUE PHARMA              :
MANUFACTURING L.P.; PURDUE      :
PHARMACEUTICALS L.P.; PURDUE      :
TRANSDERMAL TECHNOLOGIES L.P.;   :
PURDUE PHARMACEUTICAL PRODUCTS  :
L.P.; PURDUE PHARMA OF PUERTO RICO;  :
RHODES PHARMACEUTICALS L.P.;     :
RHODES TECHNOLOGIES; and AVRIO    :
HEALTH L.P.,                      :
            Plaintiffs,          :
                                   :

v.                                  :
                                   :

AIG SPECIALTY INSURANCE COMPANY   :
f/k/a AMERICAN INTERNATIONAL     :
SPECIALTY LINES INSURANCE COMPANY; :
ALLIED WORLD ASSURANCE COMPANY,  :
LTD.; AMERICAN GUARANTEE AND    :
LIABILITY INSURANCE COMPANY;     :
AMERICAN INTERNATIONAL        :
REINSURANCE COMPANY f/k/a STARR   :
EXCESS LIABILITY INSURANCE      :
INTERNATIONAL LIMITED; ARCH      :
REINSURANCE LTD., CERTAIN MEMBER  :
COMPANIES OF THE INTERNATIONAL   :
UNDERWRITING ASSOCIATION OF     :
LONDON SUBSCRIBING TO POLICY NO.  :
823/KE0002108; CHUBB BERMUDA     :
INSURANCE LTD. f/k/a ACE BERMUDA   :
INSURANCE LTD.; EVANSTON       :
INSURANCE COMPANY; GULF        :
UNDERWRITERS INSURANCE COMPANY;  :
HDI GLOBAL SE f/k/a GERLING-KONZERN :
GENERAL INSURANCE COMPANY;     :

IRONSHORE SPECIALTY INSURANCE          :
COMPANY f/k/a TIG SPECIALTY            :
INSURANCE COMPANY; LIBERTY             :
INSURANCE CORPORATION; LIBERTY         :
MUTUAL FIRE INSURANCE COMPANY;         :
LIBERTY MUTUAL INSURANCE EUROPE        :
SE f/k/a LIBERTY INTERNATIONAL         :
INSURANCE COMPANY; NATIONAL            :
UNION FIRE INSURANCE COMPANY OF        :
PITTSBURGH, PA; NAVIGATORS             :
SPECIALTY INSURANCE COMPANY;           :
NORTH AMERICAN ELITE INSURANCE         :
COMPANY; ST. PAUL FIRE AND MARINE      :
INSURANCE COMPANY; STEADFAST           :
INSURANCE COMPANY; SWISS RE            :
INTERNATIONAL S.E. f/k/a SR            :
INTERNATIONAL BUSINESS INSURANCE       :
COMPANY also f/k/a ZURICH              :
REINSURANCE (LONDON) LIMITED;          :
TENECOM LIMITED f/k/a WINTERTHUR       :
SWISS INSURANCE COMPANY; XL            :
BERMUDA LTD. f/k/a XL INSURANCE        :
COMPANY, LTD., XL INSURANCE            :
AMERICA, INC.; NEW HAMPSHIRE           :
INSURANCE COMPANY; DARAG               :
INSURANCE UK LIMITED; QBE UK           :
LIMITED; ZURICH SPECIALTIES LONDON     :
LIMITED; SR INTERNATIONAL BUSINESS     :
COMPANY SE; and LIBERTY MUTUAL         :
INSURANCE COMPANY,                     :
                Defendants.          :
--------------------------------------------------------------x

Briccetti, J.:

       In this District, any case or proceeding arising under the Bankruptcy Code is

automatically referred to the Bankruptcy Court.  In re Standing Order of Reference Re:  Title 11,

12 MC 32 (S.D.N.Y. Jan. 31, 2012) (Doc. #1).  Before the Court is a motion that seeks to

withdraw to this Court an automatically referred adversary proceeding currently pending in the

Bankruptcy Court.

       For the following reasons, the motion is DENIED WITHOUT PREJUDICE.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334.

## BACKGROUND

The debtors (collectively, "Purdue") manufacture pharmaceuticals, including the prescription opioid OxyContin.  Facing mounting lawsuits alleging misconduct in its manufacture, marketing, and sale of OxyContin, Purdue filed voluntary petitions for Chapter 11 bankruptcy on September 15 and 16, 2019.  "At the time [of the bankruptcy filing], the Debtors were facing over 2,600 governmental enforcement actions and private lawsuits in state and federal courts . . . , each of which alleged that Purdue's manufacture, promotion, and sale of prescription painkillers contributed to the ongoing opioid crisis that has killed hundreds of thousands and left millions more struggling with addiction."  In re Purdue Pharms. L.P., 619 B.R. 38, 41 (S.D.N.Y. Aug. 11, 2020).  Purdue estimates the opioid-related claims against it total more than 140 trillion dollars.  (Adv. Pro. Doc. #1 ("Compl.") ¶ 7).[1]

On March 15, 2021, Purdue filed its proposed Chapter 11 plan of reorganization.  (Bankr. Doc. #2487).  Purdue filed its proposed twelfth amended Chapter 11 plan on September 2, 2021 (Bankr. Doc. #3726 ("Plan")), which was confirmed on September 17, 2021.  In re Purdue Pharma L.P., -- BR -- , 2021 WL 4240974 (Bankr. S.D.N.Y. Sept. 17, 2021).

For the purposes of the plan, Purdue divides the claims against it into several categories, one of which it calls "PI Claims."  (Plan § 4.10).  "PI Claims" are claims "for alleged opioid-related personal injury."  (Id. at 21, 25, 27; see, e.g., Bankr. Doc. #2598, at 1 ("Purdue Pharma has cost me loved ones I will never see again.")).

---

[1]    This Opinion and Order references filings in this case by (Doc. #), in the adversary proceeding before the bankruptcy court by (Adv. Pro. Doc. #), and in the main bankruptcy case by (Bankr. Doc. #).

The plan provides for the creation of the "PI Trust," which will administer all PI Claims. (Plan at 28).  The trust will be funded with an initial distribution of $300 million on the effective date of the Chapter 11 plan, followed by a distribution of $200 million in 2024, and distributions of $100 million in 2025 and 2026.  (Bankr. Doc. #2983 ("Disclosure Statement") at 6–7).  In sum, "[t]he PI Trust will receive at least $700 million in value, and may receive an additional $50 million depending on the amount of proceeds received on account of certain of Purdue's insurance policies."  (Id. at 7 n.10).

The plan further provides that Purdue's ability to recover from its insurers will be vested in a "Master Disbursement Trust," or "MDT."  (Plan § 5.6; Disclosure Statement at 130).  To the extent any proceeds are recovered from Purdue's insurers with respect to the PI Claims, up to $450 million of those proceeds will be channeled from the MDT to the PI Trust.  (Disclosure Statement at 106–07).  However, the PI Trust will be funded regardless of whether anything is recovered from Purdue's insurers.  (See id. at 7 n.10).  Instead, "[d]istributions to the PI Trust are subject to prepayment on a rolling basis as insurance proceeds from certain of Purdue's insurance policies are received by the MDT and paid forward to the PI Trust."  (Id. at 7 n.9).

The Purdue entities subject to PI Claims ("plaintiffs"), together with the Official Committee of Unsecured Creditors and the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants in the Chapter 11 Cases, commenced this adversary proceeding on January 29, 2021.  (Compl. at 1 n.1).[2]  Plaintiffs allege they hold insurance policies with each defendant, and the policies were entered into before they filed for bankruptcy protection.  In the

---

[2]     Plaintiffs are Purdue Pharma L.P.; Purdue Pharma Inc.; Purdue Pharma Manufacturing L.P.; Purdue Pharmaceuticals L.P.; Purdue Transdermal Technologies L.P.; Purdue Pharmaceutical Products L.P.; Purdue Pharma of Puerto Rico; Rhodes Pharmaceuticals L.P.; Rhodes Technologies; and Avrio Health L.P., formerly known as Purdue Products L.P.  (Compl. ¶¶ 11–19).

adversary proceeding, plaintiffs seek a declaratory judgment as to the scope of their coverage under these policies.  Plaintiffs contend their insurance policies obligate defendants to indemnify them for, among other things, the PI Claims, and estimate the policy limits exceed $3.3 billion.

On March 22, 2021, defendants Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Insurance Corporation ("Liberty Mutual") moved to withdraw the reference of the adversary proceeding from the Bankruptcy Court.  (Doc. #1).[3]

Certain defendants—principally foreign insurers—joined in the motion and argued separately the motion to withdraw the reference should be granted in light of their unique defenses, namely, lack of personal jurisdiction and that any claims against them are subject to mandatory arbitration.  (Doc. ##9–10).  In particular, these defendants pointed to their unresolved motion to stay the adversary proceeding against them pending mandatory arbitration.

The Bankruptcy Court granted the stay as to these defendants on June 21, 2021.  In so doing, the court found the claims against them were non-core.  (Doc. #49 Ex. A ("Tr."), at 93:08–:18).  On July 1, 2021, this Court requested additional briefing from the parties on the impact of this ruling on the pending motions.  (Doc. #50).  Plaintiffs contend the ruling has no impact on this Court's decision, and defendants argue this Court should heed the Bankruptcy Court's determination and find here the adversary proceeding is non-core.  (Doc. #51).

---

[3]     Defendants Navigators Specialty Insurance Company (Doc. #5); Gulf Underwriters Insurance Company and St. Paul Fire and Marine Insurance Company (Doc. #6); SR International Business Company SE, Chubb European Group SE, QBE UK Limited, Darag Insurance UK Limited, Zurich Specialties London Limited, XL Bermuda, Ltd., AIG Specialty Insurance Company, New Hampshire Insurance Company, American International Insurance Company, North American Elite Insurance Company, Aspen American Insurance Company, XL Insurance America, Inc., and National Union Fire Insurance Company of Pittsburgh, P.A (Doc. ##9, 12); and American Guarantee and Liability Insurance Company and Steadfast Insurance Company (Doc. #19), join in Liberty's motion.

**DISCUSSION**

I.     Legal Standard

28 U.S.C. § 157(d) authorizes withdrawal of Bankruptcy Court references on both

mandatory and permissive grounds.

District courts must withdraw a reference when "substantial and material consideration of

non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." In re

Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990).[4]

As for permissive withdrawal, courts in the Second Circuit follow a two-step inquiry to

determine if withdrawal is appropriate.  First, a court must evaluate whether the bankruptcy

proceeding is "core or non-core," In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993),

"core proceedings" being "those that arise in a bankruptcy case or under Title 11." Stern v.

Marshall, 564 U.S. 462, 476 (2011).  If it is a core proceeding, the court should also consider

whether the bankruptcy court has the power to enter a final judgment.  See id. at 502–03 (holding

bankruptcy courts lack constitutional authority to enter final judgment in certain core

proceedings).  Second, the court must "weigh questions of efficient use of judicial resources,

delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum

shopping, and other related factors." In re Orion Pictures Corp., 4 F.3d at 1101.

Ultimately, the permissive withdrawal analysis comes down to whether efficiency and

uniformity would be better served by litigating in the district court.  See In re Orion Pictures

Corp., 4 F.3d at 1101; Mishkin v. Ageloff, 220 B.R. 784, 800 (S.D.N.Y. 1998) ("[T]he critical

---

[4]     Unless otherwise indicated, case quotations omit all internal citations, quotation marks,
footnotes, and alterations.

question is efficiency and uniformity.").  District courts "ha[ve] broad discretion to withdraw the reference for cause."  In re Enron Corp., 295 B.R. 21, 25 (S.D.N.Y. 2003).

The movant bears the burden of showing withdrawal is warranted.  See In re Ames Dep't Stores Inc., 512 B.R. 736, 741 (S.D.N.Y. 2014); In re Lehman Bros. Holdings Inc., 18 F. Supp. 3d 553, 557 (S.D.N.Y. 2014).

II.    Permissive Withdrawal

Liberty Mutual asserts permissive withdrawal is appropriate because (i) the adversary proceeding is non-core, and (ii) the remaining Orion factors weigh in favor of withdrawal of the reference from the Bankruptcy Court.  Moreover, Liberty Mutual argues permissive withdrawal is appropriate given its demand for a jury trial, which it contends the Bankruptcy Court may not conduct absent consent, which Liberty Mutual says it will not provide.[5]

These arguments are addressed in turn.

A.    Core or Non-Core

Liberty Mutual contends the adversary proceeding is "non-core."

The Court agrees.

1.    Legal Standard

"The Bankruptcy Code divides claims in bankruptcy proceedings into two principal categories:  'core' and 'non-core.'"  In re U.S. Lines, Inc., 197 F.3d 631, 636 (2d Cir. 1999). Under the Code, and subject to the limits of Article III, bankruptcy courts may adjudicate core proceedings to final judgment.  28 U.S.C. § 157(b)(1); Stern v. Marshall, 564 U.S. at 502–03.  In non-core proceedings, bankruptcy courts "submit proposed findings of fact and conclusions of

---

[5]    Liberty Mutual does not argue mandatory withdrawal is appropriate here.

law to the district court." 28 U.S.C. § 157(c)(1).  Any objections to the bankruptcy court's findings are reviewed <u>de novo</u>.  <u>Id</u>.

Section 157(b)(2) of the Bankruptcy Code enumerates a non-exhaustive list of "core" proceedings.  These include, for example, "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship."  11 U.S.C. § 157(b)(2)(A), (O).

"[W]hether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization."  <u>In re U.S. Lines, Inc.</u>, 197 F.3d at 637.

The answer to the first question depends on whether the contract was formed before the bankruptcy filing, not whether the breach occurred before the filing.  <u>See, e.g.</u>, <u>DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.</u>, 464 B.R. 587, 591–92 (S.D.N.Y. 2012).

The answer to the second question is determined by "the nature of the proceeding."  <u>In re U.S. Lines, Inc.</u>, 197 F.3d at 637.  "A proceeding's nature can be core if either (1) the type of the proceeding is unique to or uniquely affected by the bankruptcy proceeding, or (2) the proceeding directly affects a core bankruptcy function."  <u>In re Millenium Seacarriers, Inc.</u>, 419 F.3d 83, 97 (2d Cir. 2005).  "Core bankruptcy functions include fixing the order of priority claims against a debtor, placing the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors, and administering all property in the bankrupt's possession."  <u>Id</u>.  For example, a contract dispute with the potential to have "significant impact on the administration of the estate and undercut the creditor relief provided by the" reorganization plan may be deemed a "core" proceeding.  <u>In re Relativity Fashion, LLC</u>, 696 F. App'x 26, 29 (2d Cir. 2017) (summary order).

2.     Application

Plaintiffs assert this is a core proceeding under Sections 157(b)(2)(A) ("matters concerning the administration of the estate") and 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship").  (Compl. ¶ 51).  Moreover, plaintiffs argue the insurance proceeds constitute "a very substantial asset" of the bankruptcy estate and, because of this, the outcome of this proceeding is likely to affect the "core bankruptcy function" of distributing the estate among Purdue's creditors.  (Id. ¶ 51(a)–(b)).  Further, plaintiffs contend "piecemeal litigation" of each insurance policy is incompatible with the policy goals of bankruptcy; namely, preservation of the bankruptcy estate and equitable distribution among creditors.  (Id. ¶ 51(c)).  Plaintiffs also hypothesize the adversary proceeding is core because its resolution will turn on their conduct in the bankruptcy.  (Doc. #35, at 16–19).

The Court disagrees, and finds the adversary proceeding is non-core.

First, the insurance policies pre-date the bankruptcy filing.

Second, the "nature of the proceeding" is non-core.  As the Bankruptcy Court observed, this adversary proceeding "is fundamentally a contract dispute."  (Tr. at 89:06–:07).  Plaintiffs seek a declaratory judgment as to the parties' rights under insurance policies governed by state or foreign law.  (See Compl. ¶¶ 22, 24, 26–27, 29–30, 33, 38, 44–46; Doc. #3, at 2 n.4).  This situation is not unique or uniquely affected by the bankruptcy proceeding.  See, e.g., Roman Cath. Diocese of Rockville Ctr. v. Arrowood Indem. Co., 2021 WL 1978560, at *5–8 (S.D.N.Y. May 17, 2021); In re Residential Cap., LLC, 2015 WL 9302834, at *3–4 (S.D.N.Y. Dec. 21, 2015).

A dispute between a company and its insurer is not unique to bankruptcy.  Purdue faces trillions of dollars in potential liability to people alleging injuries from Purdue's manufacture,

marketing, and sale of prescription opioids.  Its insurers would likely have disputed their

obligation to cover claims of that magnitude regardless of whether Purdue sought bankruptcy

protection.

       Nor is this dispute uniquely affected by the bankruptcy proceeding.  The Chapter 11 plan

was confirmed on September 17, 2021, notwithstanding this dispute.  In re Purdue Pharma L.P.,

2021 WL 4240974, at *54; (see Tr. at 97:08–:11 ("[M]ore importantly, again, this dispute is not

determinative or dispositive of the plan confirmation process, either the negotiation of the plan or

confirmation of the plan itself.")).  The PI Trust will be funded regardless of whether the MDT

recovers anything from Purdue's insurers.

       Further, the Court does not credit plaintiffs' assertion that the adversary proceeding will

implicate their conduct in the bankruptcy such that the entire proceeding must be deemed core.

The sole case on which plaintiffs rely, In re Thorpe Insulation Co., 671 F.3d 1011 (9th Cir.

2012), is inapposite.  The proceeding deemed core in In re Thorpe was a dispute about a proof of

claim filed in the bankruptcy case, which clearly falls within the purview of Section

157(b)(2)(B), "allowance or disallowance of claims against the estate."  In contrast, plaintiffs

allege this adversary proceeding is core pursuant to Sections 157(b)(2)(A) and 157(b)(2)(O),

provisions the Second Circuit has cautioned should not be interpreted expansively.  See, e.g., In

re Orion Pictures Corp., 4 F.3d at 1102.

       Finally, the adversary proceeding does not affect a core bankruptcy function.  Although

plaintiffs correctly point out the adversary proceeding relates to distributing Purdue's property

(insurance proceeds) among its creditors (holders of PI Claims), that alone is not dispositive.  As

noted above, the PI Trust will be funded regardless of the outcome of the adversary proceeding.

In contrast to In re U.S. Lines, Inc., the insurance proceeds here are far from "the only potential

source of cash available to [the personal injury claimants]."  197 F.3d at 638.  As the Bankruptcy

Court noted, the potential insurance recovery in this adversary proceeding is between $1 and

$3.3 billion, "which would not constitute even the primary asset of the Debtors' estate."  (Tr. at

97:04–:11).

Accordingly, the Court finds the adversary proceeding is non-core.

B.      Remaining Orion Factors

Plaintiffs argue that even if the adversary proceeding is non-core, the balance of the

Orion factors weigh in favor of denying the motion to withdraw.

The Court agrees.

In evaluating whether permissive withdrawal is appropriate, in addition to considering

whether a proceeding is core or non-core, courts must "weigh questions of efficient use of

judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the

prevention of forum shopping, and other related factors."  In re Orion Pictures Corp., 4 F.3d at

1101.

First, it would be more efficient for the adversary proceeding to remain in the Bankruptcy

Court.  The Purdue bankruptcy is "highly unusual and complex."  In re Purdue Pharma L.P.,

2021 WL 4240974, at *1.  The Bankruptcy Court (Honorable Robert D. Drain) has been

overseeing the bankruptcy and adversary proceedings for several years, and it is intimately

familiar with the parties, the facts involved and issues at stake, and the Chapter 11 plan.  It will

be more efficient for the proceeding to continue to be managed by the Bankruptcy Court, and,

should the need arise, for this Court to issue any final judgment with the benefit of the

Bankruptcy Court's experience and insight as set forth in a decision on summary judgment or

proposed findings of fact and conclusions of law.  See, e.g., In re Lehman Bros. Holdings Inc.,

18 F. Supp. 3d at 558 ("The Bankruptcy Court's resolution of any motion for summary

judgment, or any decision by the Bankruptcy Court based on the documentary record, will be very useful to the District Court given the Bankruptcy Court's experience with the Lehman bankruptcies and related adversary proceedings involving swap agreements and derivative-based claims."); In re Lyondell Chem. Co., 467 B.R. 712, 723 (S.D.N.Y. 2012) ("This Court will benefit from exposure to the bankruptcy court's knowledge and expertise when it rules on the outstanding motions.").  This reasoning is applicable notwithstanding Judge Drain's impending retirement from the bench.  See In re Lehman Bros. Holdings Inc., 18 F. Supp. 3d at 558 (finding the benefit of keeping one of the Lehman adversary proceedings in the bankruptcy court was undiminished even after Judge Peck, who presided over the Lehman bankruptcy from its inception, retired).

For the same reasons, denying the motion will not result in delay or unnecessary costs to the parties.  "Given the extensive experience the bankruptcy court has acquired in this matter, permitting it to . . . conduct pre-trial proceedings will be of assistance to this Court and to the parties."  In re Lyondell Chem. Co., 467 B.R. at 724.  It will also promote uniformity of bankruptcy administration.  In re Cnty. Seat Stores, Inc., 2002 WL 141875, at *6–7 (S.D.N.Y. Jan. 31, 2002) ("Allowing the Bankruptcy Court to adjudicate the Coverage Action will, by contrast, help ensure uniformity in the various proceedings among all the parties and help prevent inconsistent judgments.").

The Court is not persuaded by plaintiffs' arguments about forum shopping, and it finds this factor is neutral.

Accordingly, the Court concludes the balance of the Orion factors weigh in favor of denying the motion to withdraw the reference.

C.     Jury Trial

Finally, Liberty Mutual contends the motion to withdraw the reference must be granted because the Bankruptcy Court will be unable to conduct a jury trial.

The Court disagrees, but concludes the motion should be denied without prejudice to renewal.

The argument about the Bankruptcy Court's inability to conduct a jury trial is "premature, because the prospect of a trial is purely speculative at this juncture." Thaler v. Parker, 525 B.R. 582, 587 (E.D.N.Y. 2014).  Although Liberty Mutual has made a jury demand (Adv. Pro. Doc. #61, at 18), the prospect of a jury trial does not require withdrawal of the reference from the Bankruptcy Court at this stage of the case.  See In re Lehman Bros. Holdings Inc., 480 B.R. 179, 194–95 (S.D.N.Y. 2012).  "Courts in this district routinely deny motions to withdraw the reference before a case is ready to be tried." In re HHH Choices Health Plan, LLC, 2019 WL 1409712, at *3 (S.D.N.Y. Mar. 28, 2019).  Further, declaratory judgment actions involving insurance policies are routinely resolved on summary judgment, in which case a jury trial would be unnecessary.

Accordingly, the motion to withdraw the reference is denied without prejudice to renewal if and when the adversary proceeding is trial ready.  See, e.g., Lehman Bros. Holdings Inc. v. Wellmont Health Sys., 2014 WL 3583089, at *5 (S.D.N.Y. July 18, 2014).

## CONCLUSION

The motion to withdraw the reference is DENIED WITHOUT PREJUDICE.

The Clerk is directed to terminate the motion (Doc. ##1, 9) and close this case.

Dated: November 8, 2021
       White Plains, NY

                                   SO ORDERED:

                                   Vincent L. Briccetti
                                   United States District Judge